## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

Cynthia S. Hill     :
4358 F Street, S.E.    :
Washington, D.C.,    :
    Plaintiff,   :
         :
   v.     :  Civil Action _____
         :
Hon. Vincent Gray,    :
District of Columbia,   :  Judge  _____
1350 Penn., Ave., N.W.   :
Washington, D.C. 20004,  :
  And,      :
         :
District of Columbia   :
Office of the Attorney General :
441 4th Street, , N.W. 6th Floor :
Washington, D.C. 20001,  :
  And,      :
         :
District of Columbia,   :
Serve: Kaya Henderson, Chansellor :
Public Schools     :
1200 1st Street, N.E.   :
Washington, D.C. 20002  :
         :
    Defendants.  :
         :
_____:

## COMPLAINT FOR EMPLOYMENT AGE DISCRIMINATION, VIOLATION OF DISTRICT OF COLUMBIA PERSONNEL POLICIES, WRONGFUL TERMINATION,

   Comes now Plaintiff Cynthia S. Hill, by and through Counsel John F.

Mercer and Mercer Law Associates, PLLC, and allege against the District of

Columbia ("Defendant") and the District of Columbia Public Schools (the

"Agency" or "Defendant") as follows:

1

## JURISDICTION AND VENUE

1.      This action arises under 42 U.S.C. § 2000e 5(f)(1), 28 U.S.C. § 1331, et

seq., 28 U.S.C. 2000e 5(f)(3), 29 U.S.C. 206(d), 1391 and 1441.  This Complaint

was filed within ninety (90) days of receipt of "Dismissal and Notice of Rights"

issued October 3, 2012 pursuant to 29 C.F.R. 1601.28 (a)  by Mindy E.

Weinstein, Acting Director, U.S. Equal Employment Commission, Washington,

D.C. Field Office, 131 M Street, N.E., Suite 4 N WD2f,   Washington, D.C.

20507and received by Plaintiff  on October 4, 2012, .

This Court has jurisdiction over all claims for relief including state claims under

the supplemental and ancillary jurisdiction of the federal court.  Venue is proper

in this Court as shall be set out herein below.

## THE PARTIES

2.      Plaintiff, Cynthia S. Hill, is a resident of the District of Columbia.  She

lives at the address provided in the caption here above.  At all times pertinent to

this Complaint, Plaintiff was a resident of the District of Columbia and was

employed by the Defendant, the District of Columbia Public Schools ("DCPS" of

"Agency").

3.      Defendant, District of Columbia is a municipality acting herein through

and as DCPS an agency of the District of Columbia which at all times herein was

under executive guidance and supervision of Michelle Rhee from 2006 to 2010

and thereafter was succeeded in her position by Kayra Henderson. At all times

hereunder by and through 2010 Rhee Henderson and various other employees and

agents of the DCPS and the District who acted on behalf of DCPS and under the

2

direction of Rhee and Henderson . The Agency is an "employer" pursuant to 42 U.S.C. § 2000e, and D.C. Code 1-2502 and was so situated during all times pertinent herein.

## FACTS

4.      That Plaintiff is an African American female. At all times herein presented Plaintiff was an employee of District of Columbia ("DCPS'). At the time of the wrongful acts described herein Plaintiff was over the age of fifty-nine ("59") years. The Plaintiff entered her career with District of Columbia Public Schools ("DCPS") in the year 2000. Plaintiff graduated from University of the District of Columbia ("UDC") earning a B.S. degree in Biology (1974) and earned a Masters Degree in Education from UDC in 2006. She was hired by the DCPS as an ET-15 Science Teacher at Ballou High School. At all time described herein Plaintiff was assigned to Ballou High School ("Ballou"). Plaintiff's teaching career in the District of Columbia has a rating at a satisfaction level during her entire career. Particularly during her tenure at DCPS all her formal evaluations had been rated as "Meets Expectations" or "Exceeds Expectations." (See Exh. 3). In addition, Plaintiff has been an active member of the DC Teacher's Union since September, 2000.

6.      October 2, 2009, Plaintiff was notified by the Principal of Ballou, Rahman Branch, ("Principal Branch") that by "Reduction of Force" ("RIF") she had been removed from her position as a Science Teacher with DCPS. On November 2, 2010 Plaintiff was informed she had been permanently removed from her position due to execution of the "RIF" and permanently dismissed from DCPS.

7.      Despite the fact the RIF process was to be fair, reasonable and available to Plaintiff and those vulnerable, Plaintiff was not provided with reasonable notice as to the essential factors to be considered in removing Teachers from their employment positions. She was not apprised as to the nature and types of factors being used in determining her likelihood of removal.

8.      That Plaintiff was not made aware of information to be gathered by DCPS administrators and from whom. She and those similarly situated were not made privy to the information to be considered by DCPS nor the nature allegations that might be made as to her capability, performance, reputation and character and used to determine whether or not she would be removed.  As a result Plaintiff was unable to rebut negative allegations and provide positive information through documents and witnesses.

9.      That despite Plaintiff's background as a very successful and capable teacher, her positive background was not even minimally acknowledged within the RIF process in describing her performance. Nor were her volunteer activities, advocacy for better and safer physical school conditions, or her ten years of higher than satisfactory evaluations mentioned. Since being RIFed Plaintiff has not been notified by DCPS of availability of re-employment with DCPS; nor has Plaintiff been provided an opportunity to return to her previous DCPS position.

10.     In November, 2010, Plaintiff filed a complaint with U.S. Equal Employment Opportunity Commission ("EEOC") alleging she had been the victim of discrimination on the basis of age. . She received a Notice of Right to Suit from the EEOC on October 4, 2012. (See Exh. 1).

## [DCPS VIOLATED REQUIRMENTS OF DISTRICT OF COLUMBIA COMPREHENSIVE MERIT PERSONNEL ACT ("CMPA") OF 1978, EFFECTIVE MARCH 3, 1979 AND VIOLATED DUE PROCESS IN REMOVING PLAINTIFF FROM HER POSITIION OF EMPLOYMENT ]

11.    [Procedures set forth in accordance with the Comprehensive Merit

Personnel Act ("CMPA"), D.C. Code §§ 1-624. 02 thru 1-624.08 and Regulations

5 DCMR §§ 1500 *et seq* governs Reductions in Force ("RIF'). It is Plaintiff's

belief that the rules were purposely manipulated and arranged such that teachers

over Forty years in age would be far more likely to be removed from their

positions of employment than those under Forty years of age.

12.    Assuming *arguendo* that D.C. Code § 1-624.02 is the governing procedure

herein, Plaintiff contends that DCPS intentionally declined to prescribe an order

of separation based upon her tenure of appointment, length of service, and relative

work performance. Instead the motivating factor used to dismiss Plaintiff, and

other teachers, was age,

13.    More importantly, however, Plaintiff was not provided reasonable notice

pertaining to her employee retention standing and opportunity to meaningfully As

a result Plaintiff was denied rebuttal of the grossly negative and dishonest

testimony in the narrative issued by Principal Branch and others.[1] [Plaintiff

believes more than one hundred Teachers similarly situated to her were

discriminated against in the same method used against her (See Exhibit 6, listing

of Ballou teachers under 40 years old who were not RIFFed and similarly situated

---

[1] Apparently there were administrative DCPS employees who edited the narrative after it was written by principals (see Exhibit three) . They may have added more text to the narrative writings.

teachers over 50 Years in age who were RIFFed). Prior to being removed from her employment at Ballou, Plaintiff was not informed of the "Competitive Level Documentation Form" and/or description of her performance submitted which was to be contributed Principal Branch and entered to the ("CLDF") as the Agency's justification for her removal by RIF.

14.       Principal Branch's function as unilateral witness to describe and "assess" Plaintiff's performance and work ethic presented in the CLDF did not meet minimal standards of fairness.  His "CLDF" document was absent supporting third party support, lacked corroboration of any form of documentation, was absent of sworn information or his acknowledgement in writing indicating the information he has presented was made truthfully and honestly. Additionally, he failed to swear as to his submission and an acknowledgment of possibility of perjury.[3] The devastating and untruthful narrative, describing Plaintiff's alleged performances, could never have been at any reasonable level of acceptance by any reasonable governmental standard of procedure.

**The Agency Failed To Administer, Score and Rank Employee's One Round
of Lateral Competition Accurately, Fairly or In Compliance
with RIF Procedures Set Forth in Accordance with the CMPA, D.C. Code §§
1-624. 02 thru 1-624.08 and Regulations 5 DCMR §§ 1500 *et seq*__**

---

[3] The absence of swearing as witness to such a document as was presented by Principal Branch in the CLDF without a declaration of possibility of perjury by itself is ground for removing the entire CLDF. The Principal Branch's narrative was not private declaration but a federal and governmental declaration. The narrative was without doubt the seminal document relied upon to remove Ms. Hill from federal and District of Columbia employment.

15.     Plaintiff filed a Petition with the OEA, on November 30, 2009,

challenging the Agency's decision to RIF her.  Plaintiff was not provided

particulars of DCPS' basis for termination or pertinent competitive level

evaluation documents contemporaneous to the actual RIF.   Notwithstanding, by

definition the determination of a competitive area and level, coupled with a very

specific rating process are all statutorily mandated and an integral part of DCPS'

administration of the RIF process. *D.C. Code 1-624.02 thru 1-624.08 (d)* and *5*

*DCMR Chapter 15.* It wasn't until sometime after the November 2, 2009,

effective date of the RIF that Plaintiff petitioner received any copies of her

"Competitive Level Ranking Score Card" documents and sanitized copies of her

competitors.  The Plaintiff was harmed because of DCPS' insufficient notice and

failure to include appropriate and timely input.

**DCPS MAMNIPULATED THE LATERAL COMPETITION MAKING IT
HIGHLY UNLIEKLTHAT TEACHERS OVER FOURTY YEARS OF AGE
AND OLDER WOULD HAVE AN EQUAL CHANCE IN THE LATERAL
COMPETITION**

16.     The Competitive Level Ranking Score Card ("CLRSC") did not properly

follow the regulations and laws of the District of Columbia CMPA. (See Exh. 5).

In addition, Plaintiff believes the execution of the RIF violated due process of

law.

18.     In the Employee's case the unilateral use of the "narrative" written and

placed into the "Competitive Level Ranking Score Card" was the mechanism that

created unfairness and allowed the Plaintiff to be dismissed based on her age and

seniority.   Principal Branch, in writing his narrative, removed Employee from her position.  It was done in such a manner where she had no possibility of surviving.

19.      The Employee, a dedicated teacher, was removed by the narrative.  She had no recourse no opportunity for challenging.  She had no knowledge of the narrative until after she was dismissed. She was without a true opportunity to participate in a lateral competition.

20.      Principal Branch, who had very little actual knowledge of Employee's work, made no effort to allow the Plaintiff an opportunity to present her position. The narrative ignored age old legal necessities. Though the narrative did not satisfy the purpose of D.C Code § 1-624.02 and 5 DCMR Chapter 15 (RIF Regulations). It actually insured lack of a fair and effective competitive process and permitted the Plaintiff and others to be dismissed based on their age.

21.      At the time of the RIF Plaintiff was a full time tenured employee with DCPS and experienced Science Teacher who had worked for DCPS for more than ten years.  Approximately two weeks prior to the RIF she was subjected to what might be described as a "last minute observation."  It was arranged by Principal Branch without Plaintiff's knowledge. She vehemently protested as being illegitimate and purposefully.

22.      At the time of her "lateral competition" the decisions as to Plaintiff's fate had already been determined.  Prior to the lateral competition DCPS had already targeted Plaintiff for removal based upon her age, and age-related stereotyped reasons related thereto, including salary, union participation, leadership, strength of character, outspokeness, demanding. Plaintiff was removed from her position with the Agency. Plaintiff's demands reinstatement to her position based upon failure of the Agency to execute the RIF in compliance s to the applicable rules.

23.    Given Plaintiff's work record, experience, qualifications, certifications, and length of creditable service, when Plaintiff finally received the "Competitive Level Ranking Score Card," she was devastated by the "Rating" and "Weighted Score" for each and every of the Factors:  1-4. Further, the narrative that accompanied and was incorporated into the "Ranking Score Card", written and signed by Principal Branch, contained flagrant inaccuracies and misrepresentations. "(See Exh.5 ). Plaintiff's Competitive Level Ranking Score Card). The entire narrative provided in the "Competitive Level Documentation Form" is untrue, unsupported by facts and defamatory, and completely contrary to the Plaintiff's previous yearly evaluations. Furthermore, there are statements in the narratives that suggest that DCPS took a "cut and paste" approach in which they provided essentially the same damaging narratives for other Employees negatively impacted because of their age.

24.    Documentary and testimonial evidence supports the fact that the Employee's Competitive Level Ranking Score Card ("CLRSC") completed and signed by the Agency via, was filled with factual inaccuracies and misrepresentations of the truth regarding Plaintiff's skills, status and contributions to the school.  Based upon Plaintiff's experience as to validity of Affidavits of DCPS HR Officers it would be reasonable to believe affidavits of other DCPS executives are also inaccurate and false, as well.

**DEFENDANTS FAILED TO SATISFY ITS OBLIGATION OF MEETING DUE PROCESS STANDARDS.**

26.     The Employee was notified that she was subject of the RIF on October 2, 2009. On that day she was removed from the Ballou High School and ordered not to return except to recover her belongings. On November 2, 2009, she was terminated from her position. It was more than two months after the narrative had been used and the Employee had been removed from her career that she received information as to actual procedures used in the process. It was not until then that she became aware of the actual words written by Principal Branch. When the Employee became aware of the process it was too late to recover her professional reputation, her educational standing and her career.

27.     The entire narrative submitted by Principal Branch was dishonest, factually deficient, defamatory and contrived. For example in his narrative (in the "Competitive Level Ranking Score Card") Principal Branch wrote the following:

***Ms. Hill does not reinforce positive behavior and fails to address the needs of student.  She continues to teach without lesson plans, she fails to state and objective , and her workspace is disorganized.***

28.     The reality (and irony) was the very day Branch wrote in his narrative Plaintiff had developed more than two hundred pages of lesson plans, some of which she was currently using and others of which she was preparing to use in 2010. (Exhibit 4).[4]

29.     Branch never sought copies of Employee's lesson plans principally due to his absence from work. However, at one instance Employee provided Branch a

---

[4] Actually the Plaintiff had organized approximately 30 pages of her "lesson Plans." They were available but were not asked requested by Principal Branch. The records are currently available.

copy of her lesson plan in order that DCPS headquarters have documentation
indicating her educational activities. The Employee had been worked with an
assigned "Master Educator" Ms. Delores Saunders ("Saunders").

30.     Saunders received a lesson plan from Employee on a weekly basis and, in
turn, delivered the lesson plans to DCPS headquarters. This process took place on
a weekly basis during the later part of the 2008-2009 school year. Branch failed to
complete his observation of Employee's work with Ms. Saunders. Branch's
failure to follow educational interaction between Ms. Saunders combined with his
alarming poor attendance caused many of the Ballou teachers to be concerned.
Seldom did Ms. Saunders arrange to have Mr. Branch sign off on her findings.

31.     Finally, during the time of the RIF, Branch's credibility was questionable
within the faculty and the District of Columbia. He was responsible for several
financial scandals, to wit: $75,000 from Ellen DeGeneres (television celebrity)
earmarked for the Ballou band was cancelled and instead of going to the band
Ballou instead spend thousands of dollars to send six students from the 9th grade
Academy to Africa; He was also thought to be responsible for the failure of
issuing a promise allotment of $750 per teacher for Departments Science supplies.
Under his watch this commitment failed to materialize. [5]

32.     Branch's work ethic and his credibility were not considered in the decision
as to whether his narratives were credible. His writing was not judged at all.
Despite his negativity, questions from teachers and others concerning his handling

---

[5] There are several witnesses who can testify as to the Branch's reputation as Principal.
One Witness is Robert Willis

of Ballou's budget and his absence when required to be his office, none of these
things were weighed in when the Agency accepted his narratives.

33.     Based upon Employee's records, her educational reputation, and her
evaluations there is no support for the information precipitating her removal from
Ballou. Her record of professionalism stands with her.  Employee received a
favorable evaluation for the school years 2008-2009 from the Ms. Saunders.

34.     Employee rejects the notion she was provided a "One Round of Lateral
Competition" in the determination of who was to be removed by the RIF. In
effecting DCMR § 1503.2, Section 1503.2, the Agency cannot blindly take any
information as being credible without engaging in a reasonable and serious effort
to determine whether the "narratives" provided by principals are honest and
factual. To do so is to ignore due process standards.

35.     Branch provided what was the equivalent of testimony in referring to
Employee's work and capability. However took no oath, presented no factual
material.  He was allowed to simply provide bold unsupported and startling
describing the Plaintiff as incompetent and unworthy of employment.

36.     The Plaintiff was not allowed to present a rebuttal. There was no process
available for her to bring forth evidence to dispute the content of the narrative
prior to her removal.  When she found that she had been removed she was not
provided a copy of the narrative.   Thus, errors and information which could have
easily been indentified and eliminated from the narrative were not. Plaintiff had
no opportunity challenge, those errors and untruthful statements.

37.     The "competitive process" was intentionally designed so that those with a history of competent teaching in the following:

(a)     Evaded evaluations of teachers for the 2009-2010 year, intentionally eliminating professional records of performance of teachers and leaving no professional observation of teachers' teacher's performances.  This exposed teachers to dishonest and false information as to their 2009-2010 school year performances.

(b)     Structured the "competitive level competitive" system such that there you could have a maximum of 1 point for previous positive evaluations.  This structure insured that older teachers with positive records would not be fairly adjudged for long term positive evaluations.

(c)     Structured the "competitive level competition to provide the heaviest number of points to rest with the Principal individually, without verification or support of others, to pronounce whether a teacher was determined to be "needed" at the school as an employee.

(d)     Encouraged principals to be harsh and negative in writing the "narratives" and to be extreme, hostile and to exaggerate in describing them teachers' negative characteristics so as to make it very clear that teachers should be removed.

(e)     Weighed the "narratives" so that the narrative, by itself, if  issued the maximum amount points ("10"), would be sufficient points to remove the teacher from her/his position.

(f)     Structured the "competitive level" competition such that the principals who participated in drafting the narratives did not see the final narrative document until after it had been completed by DCPS administrators. Until that point it was subjected to modifications.  The Principals did not sign after the narratives were edited and finalized by the administrators and served to the teachers who were removed.

38.     That in removing Plaintiff from her position , DCPS violated,

circumvented and disregarded the merit hiring and promotional system required

by laws of the District of Columbia used to hire and promote  and remove D.C.

Government employees.

39.     That in refusing to retain Plaintiff who was the most qualified applicant

for the Position, it is evident that qualifications and capability were not valued in

women over the age of forty.

40.     That after over two years of denial of promotion to the Position and acts of

retaliation for her involvement in a protected EEO/ AA activity (pursuit of a

discrimination claim, challenging and resisting discriminatory harassment and

hostility), Plaintiff could no longer "tolerate" the mistreatment visited upon her by

the Agency.  Plaintiff had been defeated, demoralized and professionally impeded

by the Agency's misuse of personnel policies.  Those matters, in combination

with the on-going disparate treatment, the instances of humiliation, lack of

support from her Superiors had made it impossible for Plaintiff to survive in her

position.

41.     That the mistreatment from which Plaintiff suffered consisted of: (1)

disparate treatment by treating her differently from male employees similarly

situated; (2) retaliation against the Plaintiff for energetically engaging in protected

EEO/AA civil rights activities,  (3) failure of the Agency to adhere to personnel

policies and practices pertaining to selecting applicants for positions in the service

of the District of Columbia; (4) purposeful and unfair collusion against the

Plaintiff by her superiors ( 7) falsely forcing Plaintiff from her chosen profession

and trade so that a less qualified male applicant could be appointed to the

Position.

## COUNT ONE: THE COMPTETIVE LEVEL PROCES WAS CORRUPTED BY DCPS AND USED SPECIFICALLY TO REMOVE TEACHERS MORE THAN FOURTY YEARS OF AGE IN VIOLATION OF THE AGE DISCRIMINATION ACT OF 1967

42.    Count One incorporates by reference paragraphs One through Fourty –two

of the Complaint.

43.    That Plaintiff, an African American female, at the age of 59 was removed

from her position with DCPS because she was above the age of Forty  (40) years.

Though she was entitled under Comprehensive Merit Personnel Act ("CMPA"),

D.C. Code §§ 1-624. 02 thru 1-624.08 and Regulations 5 DCMR §§ 1500 *et seq*

to compete with other teachers to maintain her position, she was not given a fair

opportunity to do so because the competitive structure was specifically fashioned

to ensure Teachers over the age of  Forty (40) years in age were extremely

exposed to being removed from their positions of employment, while an

exceedingly high level which those teachers under Forty (40) Years  of age were

exceedingly like to maintain their positions of employment.

## COUNT TWO:VIOLATION OF DUE PROCESS

44.      Count One incorporates by reference paragraphs One through Forty-Four of the Complaint.

45.      That the Plaintiff and others similarly situated had no knowledge of the system by which they would be judged as to being necessary as they had no information as to the nature of the "competitive competition" or the way it was modeled and used.

46.      That Plaintiff had no reasonable notice of the nature of the competitive competitions and had no information as to how the competition would be operated and therefore could not have been prepared for the actions take to remove her from her position.

47.      That Plaintiff was intentionally placed in a situation where she could not protect her position of employment with DCPS because the structure of the narrative, and the process had been organized in a way that she could not have protected her position and could not have fairly competed with teachers under the age of Forty Years ("40") old who were protected by not having to present their background, experience, success in education applied for the Position, was the most qualified applicant for promotion to the Position, and was denied the position solely because she is an African American female.

### COUNT THREE: DEFAMATION OF CHARACTER AND BUSINESS DEFAMATION

48.      Count Two incorporates by reference paragraphs One through Forty-Eight.

49.     The narrative has damaged the professional and personal reputation of the Plaintiff by publishing false, dishonest, factually deficient, defamatory and contrived which.

50.     The false statements specifically spoke Plaintiff's professional and business reputation.

51.     The Defendant knew, or should have known, the statements made in the narrative were false, wrongful, and would damage Plaintiff's personal and professional reputation.


**WHEREFORE THE PREMISES CONSIDERED, PLAINTIFF PRAYS,**

That for the actions of invidious discrimination alleged in Count One of the complaint, the Plaintiff be awarded damages against the Defendants, including but not limited to: reinstatement, front pay, back pay with bonuses, merit-performance increases, awards, retirement contributions, and all leave and benefits of the ET-15 with a teaching assignment , and/or its successor position, in addition to applicable compensatory damages, in the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00);

That for the actions of invidious violating Due Process alleged in Count Two of the Complaint, the Plaintiff be awarded damages against the Defendants, including but not limited to: reinstatement, front pay, back pay with bonuses, merit-performance increases, awards, retirement contributions, and all leave and benefits of the position of ET-15 with a teaching assignment , and/or its successor

position, in addition to applicable compensatory damages, in the amount of

THREE HUNDRED THOUSAND DOLLARS ($300,000.00).

That for the actions of Defamation alleged in Count Three of the Complaint, the

Plaintiff be awarded damages against the Defendants, including but not limited to:

damages for harm done to professional, business, and personal reputation in the

amount  of THREE HUNDRED THOUSAND DOLLARS ($300,00.00).

That for the actions of invidious discrimination and defamation alleged in

Counts One through Three of the Complaint, the Plaintiff be awarded damages

against the Defendants, including but not limited to, front pay until Plaintiff's

retirement age of Sixty-Five.

That because the above actions by the Defendants in each and every count

herein were committed intentionally, willfully, and maliciously, and Plaintiff

prays for compensatory damages (including past, present, and future mental and

medical health bills, prescription expenses, parking fees, and all other related

costs attendant with seeking psychiatric and medical help to alleviate pain and

suffering based on stress, embarrassment, humiliation, mental anguish,

depression, and physical injuries) due to Defendants' Age discrimination and

hostility created in the work place in the amount of TWELVE MILLION, FOUR

HUNDRED THOUSAND DOLLARS ($12,400,000.00).

That for the above actions of invidious discrimination by the Defendants

alleged in all counts herein, Plaintiff prays for attorney's fees, meeting expenses,

transportation and parking costs for medical and mental health related visits,

alternative dispute resolution meetings, depositions, and court costs, as well as

pre-judgment interest for all damages listed above.

Plaintiff seeks judgment in her favor and prays for payment of all recoverable

costs.

Respectfully submitted,

John F. Mercer, Esq.
Bar # 184549
Mercer Law Associates, PLLC
1629 K Street, NW, Suite 300
Washington, DC 20036
Mobile: 240.535.8758
Telephone: 202.349.1686
Email: jmjmercer@aol.com
Counsel for Plaintiff

## **JURY TRIAL DEMAND**

The Plaintiff demands a jury trial in this matter pursuant to Rules 38(b) and 5(b) FRCP.

_____
John F. Mercer, Esq.

Date: January 2, 2013