**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| CYNTHIA HILL, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 1:13-0001 (RC) |
| | : | | |
| v. | : | Re Document No.: | 8 |
| | : | | |
| HON. VINCENT GRAY, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

The plaintiffs are ten former employees of the District of Columbia Public Schools, who were subject to a reduction-in-force. The plaintiffs brought this suit against the District of Columbia alleging defamation, due process violations, and age discrimination. The defendants moved to dismiss all of the plaintiffs' claims. For the following reasons, the defendants' motion to dismiss will be granted, in part, regarding the plaintiffs' defamation and due process violations claims and denied, in part, regarding the plaintiffs' discrimination claims.

## II. FACTUAL ALLEGATIONS

On or around October 2, 2009, the District of Columbia Public Schools ("DCPS") delivered notices of removal to over two hundred employees of DCPS as part of a reduction-in-force ("RIF"), which went into effect on November 2, 2009. Compl. ¶ 16. The plaintiffs were all employees of DCPS. Compl. ¶ 14. At the time of removal, Cynthia Hill, the initially filing plaintiff of the complaint, worked as a science teacher at Ballou High School; Carol Carter was assigned to Abraham Simon Elementary School; Curtise Woodward was a social science teacher

at Easter High School; Phyllis Lovett was a special education teacher at Ballou High School; Sandra Williams was assigned at Duke Ellington School of the Arts; Adele LaFranque was assigned at Ballou High School; Jerelyn Ola Jones was assigned at Woodson Senior High School; and Francis Simmons was a special education teacher at Eastern Senior High School. Defs.' Mot. to Dismiss 2-3; Compl. ¶¶ 15, 49-97. Four of the ten plaintiffs, Curtise Woodward, Adele LaFranque, Sandra Williams, and Francis Simmons, retired after notice of the RIF, but before the RIF went into effect. Pls.' Opp'n 1. All of the plaintiffs were over the age of forty years old when removed from their positions. Compl. ¶ 14. Additionally, each of the plaintiffs is African-American or Hispanic. Pls.' Opp'n 2.

The plaintiffs allege that they did not receive "'reasonable notice' as to the essential factors to be considered in removing [t]eachers from their employment positions. . . . [or] the nature and type of factors being used in determining [their] likelihood of removal." Compl. ¶ 17. Furthermore, plaintiffs allege that they "were not made aware of documents and information gathered [that was] used by DCPS officers and administrators to determine [removal] . . . [and] had no access to [such] documents and information." Compl. ¶ 18. "[M]ore than two years after they were written, submitted, and published," the plaintiffs received full copies of the information used by DCPS. Pls.' Opp'n 2. As a result, the plaintiffs "were unable to either confront or rebut the content of unsupported negative allegations." Compl. ¶ 18.

According to the plaintiffs, the defendants used a Competitive Level Documentation Form ("CLDF") system, including Competitive Level Ranking Score Card ("CLRSC") documents, to determine who would be removed pursuant to the RIF. Compl. ¶ 25; Pls.' Opp'n 2. CLDFs and CLRSCs contained narratives written by DCPS principals and administrators about employee's performance. Pls.' Opp'n 2. The plaintiffs argue that the narratives were

2

untrue and that "[t]he CLDF was used to describe [p]laintiffs' professional  performances as opposed to using verifiable information such as evaluations, verifiable observations, or supported documents, professional third parties, or active parents."  Pls.' Opp'n 2-3.  Once the plaintiffs received copies of the CLRSCs in early 2012, they claim they became aware of statements that were "untrue, unsupported by facts, destructively defamatory, and completely contrary to . . . previous yearly evaluations."  Compl. ¶ 32.

Ms. Hill, the initially filing plaintiff, filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") in November of 2010.  Compl. ¶ 20.  On October 4, 2012, Ms. Hill received a right-to-sue letter from the EEOC, Compl. ¶ 20, and filed her complaint with this Court on January 2, 2013, Pls.' Opp'n 3.  On May 6, 2013, Ms. Hill filed a motion to amend her initial complaint along with the amended complaint, which includes the nine additional plaintiffs.  Pl.'s Mot. for Leave to File Am. Compl.  This Court granted the motion, and the amended complaint was filed on May 26, 2013.  Pls.' Opp'n 3.  All of the nine added plaintiffs filed complaints with the EEOC except for two, Carol Carter and James Lightfoot.  Defs.' Mot. to Dismiss 3.  The seven plaintiffs that filed with the EEOC received right-to-sue letters between the dates of November 30, 2012 and March 28, 2013.[1]  Pls.' Opp'n 3.  Additionally, eight plaintiffs[2] filed complaints regarding the RIF with the District of Columbia Office of Employee Appeals ("OEA").  Defs.' Mot. to Dismiss. 4.

---

[1] According to the defendant, the plaintiffs received their right-to-sue letters on the following dates: Roland Ashby-Rier on January 1, 2013; Curtise Woodward on March 28, 2013; Phyllis Lovett on February 28, 2013; Adele LaFranque on November 30, 2012; Sandra Williams on January 31, 2013; and Jerelyn Ola Jones on January 15, 2013.  Defs.' Mot. to Dismiss 4.

[2] The eight plaintiffs are Cynthia Hill, Carol Carter, James Lightfoot, Curtise Woodward, Phyllis Lovett, Adele LaFranque, Sandra Williams, and Frances Simmons.  Defs.' Mot. to Dismiss 4.

### III. ANALYSIS

First, the defendants argue that the plaintiffs' defamation claims should be dismissed under Federal Rule of Civil Procedure (Fed. R. Civ. P.) 12(b)(6) for failure to state a claim, because the plaintiffs' defamation claims do not fall within the applicable one-year statute of limitations. The defendants argue, however, that even if the defamation claims are not time-barred, then this Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), because the District of Columbia Comprehensive Merit Personnel Act gives jurisdiction over the plaintiffs' claims to the OEA. Second, the defendants argue that the plaintiffs' due process violation claims should be dismissed under Fed. R. Civ. P. 12(b)(6) for falling outside of the applicable three-year statute of limitations. Third, the defendants argue that each of the plaintiffs' discrimination claims should be dismissed in three separate parts: (1) six plaintiffs failed to properly exhaust administrative remedies; (2) three plaintiffs did not face the requisite adverse action; and (3) one plaintiff is barred by *res judicata*.

#### A. Legal Standards of Review

##### 1. Motion to Dismiss for Lack of Subject Matter Jurisdiction (12(b)(1))

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. E.P.A.*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). It is the plaintiff's burden to establish that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the Court's power to hear a claim, the Court must give the plaintiff's factual allegations closer scrutiny than would be required for a

12(b)(6) motion for failure to state a claim. *See Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the court is not limited to the allegations contained in the complaint. *See Wilderness Soc'y v. Griles*, 824 F.2d 4, 16 n.10 (D.C. Cir. 1987). Instead, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

### 2. Motion to Dismiss for Failure to State a Claim (12(b)(6))

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendants fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). It is not necessary for the plaintiff to plead all elements of her prima facie case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief

above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

### B. The Defendants' Motion to Dismiss Regarding the Plaintiffs' Defamation Claim is Granted

#### 1. Failure to State a Claim based on Statute of Limitations

The first issue raised by the defendants' motion to dismiss is whether the plaintiffs' defamation claim is barred by the applicable one-year statute of limitations. The Court finds that it is not barred.

A defamation action is considered untimely and barred if it is brought after one year from the time the action accrued. *Farris v. Compton*, 652 A.2d 49, 53-54 (D.C. 1994) (citing D.C. Code § 12-301 (1989)). The moment of accrual typically begins when the injury occurs. *Id.* at 54. However, with defamation claims, when the injury might not be readily apparent when it occurs, the moment of accrual is tolled and begins to run when the plaintiff "has discovered or reasonably should have discovered all of the essential elements of her possible cause of action." *Caudle v. Thomason*, 942 F. Supp. 635, 641 (D.D.C. 1996) (quoting *Farris*, 652 A.2d at 54); *see also Stith v. Chadbourne & Parke, LLP.*, 160 F. Supp. 2d 1, 8 (D.D.C. 2001) (applying the "discovery rule" to a defamation case where the plaintiff had no reason to suspect or know about the defamatory statement until actually seeing the statement).

The defendants argue that the plaintiffs' defamation claims are time-barred, because the claims accrued on or before October of 2009, when the statements were made and used to decide

removal, more than three years before the plaintiffs' complaint was filed in January of 2013. Defs.' Mot. to Dismiss. 5-6. The plaintiffs argue, based on one plaintiff's affidavit, that accrual of the claim did not begin until March of 2012, when the plaintiffs learned of the defamatory statements, which falls within the one-year statute of limitations.[3] Pls.' Opp'n 5, Ex. 3.

The plaintiffs claim that the defendants defamed them in narratives written in the CLDFs and CLRSCs, which were used to select employees for removal during the RIF in late 2009. Compl. ¶¶ 32-33. At the time of removal, the plaintiffs claim that they did not receive any information or materials used by the defendants in support of selecting the plaintiffs for removal. Compl. ¶¶ 17-18. The plaintiffs claim that they were unaware of the CLRSCs' contents until receiving copies of the CLRSCs by mail in 2012. Pls.' Opp'n 5. One plaintiff swore in an affidavit, "I did not receive a copy of the narrative from [defendants] and other matters related to my termination until on or about March 10, 2012." Pls.' Opp'n, Ex. 3. Once the plaintiffs received copies of the CLRSCs in early 2012, they claim they became aware of statements that were "untrue, unsupported by facts, destructively defamatory, and completely contrary to . . . previous yearly evaluations." Compl. ¶ 32.

Because the tolling exception applies to accrual of defamation claims, and because the plaintiffs claim they were not aware of the defendants' alleged defamatory statements until receiving copies of the narratives in 2012, the plaintiffs have shown "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true."" *Twombly*, 550 U.S. at 555–56 (citations omitted). If the plaintiffs' claimed early 2012

---

[3] If the Court applies a March 2012 accrual date, it is possible that some (or all) of the later-added plaintiffs' defamation claims would fall outside the applicable one-year statute of limitations because they were not added to the complaint until May 2013, more than a year after the defamation claim accrued. But it is also possible that, pursuant to Fed. R. Civ. P. 15, these plaintiffs' later-added defamation claims could relate back to the date the original complaint was filed in January 2013, thus, making them timely. However, because neither party raised or addressed this issue, the Court does not address it.

accrual is accepted as true, as required by this Court at the motion to dismiss stage, it would render their January 2013 filing of this action timely, as it is within the allotted one-year statute of limitations. Therefore, it is plausible that the plaintiffs' defamation claim is timely, and the Court denies the defendants' motion to dismiss on these grounds.

### 2. No Subject Matter Jurisdiction Under the CMPA

The defendants argue that even if the plaintiffs' defamation claim is timely, it is not actionable because of the District of Columbia Comprehensive Merit Personnel Act (CMPA). The Court finds this argument to be meritorious.

With rare exceptions, the CMPA is "the exclusive avenue for aggrieved employees of the District of Columbia to pursue work-related complaints." *Holman v. Williams*, 436 F. Supp. 2d 68, 74 (D.D.C. 2006). Among the grievances covered by the CMPA, "[c]ourts have repeatedly found defamation to be a claim that lands squarely within the CMPA's jurisdiction." *Owens v. District of Columbia*, 923 F. Supp. 2d 241, 251 (D.D.C. 2013) (holding that the plaintiff's defamation claim must be remedied pursuant to the CMPA because it arose directly from her employment). The CMPA requires aggrieved employees to first file with the Office of Employee Appeals (OEA), which has primary jurisdiction over such claims. *See* D.C. Code § 1-606.02; *Washington v. District of Columbia*, 538 F. Supp. 2d 269, 275-76 (D.D.C. 2008) (explaining that before any judicial review, the employee must first go through the OEA); *Owens*, 923 F. Supp. 2d at 249 (finding that the OEA has jurisdiction "in the first instance" and is the "first line of relief").

If there is any jurisdictional question regarding whether the CMPA applies, the plaintiff is still required to first invoke the CMPA's procedure "'because the determination whether the OEA has jurisdiction is quintessentially a decision for the OEA to make.'" *Id.* (quoting

*McManus v. District of Columbia*, 530 F. Supp. 2d 46, 78 (D.D.C. 2007)).  The OEA, pursuant to the CMPA, still has "primary jurisdiction to resolve the plaintiffs' claims" even when "an alleged constitutional violation is intertwined with an alleged statutory violation."  *Washington*, 538 F. Supp. 2d at 275 (citing *Nat'l Treasury Employees Union v. King,* 961 F.2d 240, 243 (D.C. Cir.1992)); *see also Owens*, 923 F. Supp. 2d at 248 ("Simply presenting a constitutional claim is insufficient to exempt plaintiffs from complying with the CMPA procedure."); *McManus*, 530 F. Supp. 2d at 79 ("Plaintiffs therefore cannot use a constitutional hook to reel their CMPA-precluded claims into this Court.").  This Court has also applied this principle when plaintiffs present Title VII claims and held that plaintiffs must first bring CMPA claims to the OEA.  *See Lewis v. District of Columbia*, 885 F. Supp. 2d 421, 427-28 (D.D.C. 2012) (granting defendant's motion to dismiss in part for plaintiff's CMPA claim, even though it was intertwined with a Title VII claim).

As the plaintiffs argue, courts sometimes recognize exceptions to the CMPA when the plaintiff's exhaustion of remedies would be futile.  *See Winter v. Local Union No. 639, Affiliation With Intern. Broth. of Teamsters*, 569 F.2d 146, 149 (D.C. Cir. 1977); Pls.' Opp'n 7-8. A plaintiff can demonstrate a "clear and positive showing of futility" when the prescribed remedy would not provide adequate relief or when the prescribed remedy would certainly result in an adverse decision.  *Winter*, 569 F.2d at 149 (finding that the administrative remedy provided adequate relief because the plaintiff could obtain at least some of the remedy he sought); *see also Johnson v. District of Columbia*, 552 F.3d 806, 812-13 (D.C. Cir. 2008) (holding that the plaintiff did not make a clear showing of futility because past cases supported the prescribed administrative remedy being the appropriate procedure for the plaintiff's claim); *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105-06 (D.C. Cir. 1986) (explaining that

an adverse decision is certain when the "agency charged with arbitration has indicated that it does not have jurisdiction over the dispute, or because it has evidenced a strong stand on the issue in question and an unwillingness to reconsider the issue").

The defendants correctly point out that the plaintiffs' defamation claims fall under the CMPA. Defs.' Mot. to Dismiss 6; *see Owens*, 923 F. Supp. 2d at 251. Although the plaintiffs raise a jurisdictional question regarding whether the CMPA applies when their defamation claims are linked to the same set of facts as their discrimination claims, this argument is irrelevant, "'because the determination whether the OEA has jurisdiction is quintessentially a decision for the OEA to make.'" *Owens*, 923 F. Supp. 2d at 249 (quoting *McManus*, 530 F. Supp. 2d at 78); *see also Lewis*, 885 F. Supp. 2d at 427-28. The OEA, therefore, has primary jurisdiction over the plaintiffs' defamation claims, if no exceptions apply. *See* D.C. Code § 1-606.02; *Washington*, 538 F. Supp. 2d at 275-76.

The plaintiffs argue that pursuing their defamation claims before the CMPA would be futile, thus, excusing them from having to bring that claim there first. Pls.' Opp'n 8. In support of their futility argument, the plaintiffs state that the *defendants* withheld the alleged defamatory reports from the plaintiffs and that the *defendants* "refused to negotiate" with the plaintiffs. Pls.' Opp'n 8. While this may be true, it does not demonstrate a "clear and positive showing of futility," because it does not lend support to a finding that the *OEA* would not provide adequate relief or that the *OEA* would certainly provide a decision against the plaintiffs. *See Winter*, 569 F.2d at 149. The plaintiffs also argue that filing with the OEA will be futile, because the OEA will deny jurisdiction of the defamation claims for timeliness. Pls.' Opp'n 10. As already shown, however, it is plausible that the discovery tolling rule could apply to the plaintiffs' defamation claims, which would permit the OEA's jurisdiction. *See Caudle*, 942 F. Supp. at 641.

The plaintiffs offered no other support to find a "clear and positive showing of futility." *Winter*, 569 F.2d at 149.

Although the plaintiffs argue that the defendants did not explicitly raise a lack of subject matter jurisdiction under 12(b)(1), Pls.' Opp'n 6, that does not effect this Court's decision because courts "may dispose of the motion on the basis of the complaint alone or may consider materials beyond the pleadings." *Holman*, 436 F. Supp. 2d at 73. Therefore, because the plaintiffs' defamation claims "land[] squarely within the CMPA's jurisdiction," and the plaintiffs failed to show that any exceptions apply, the Court grants the defendants' motion to dismiss the defamation claims on these grounds. *See Owens*, 923 F. Supp. 2d at 251.

### C. The Defendants' Motion to Dismiss Regarding the Plaintiffs' Due Process Violation Claim is Granted

The second issue raised by the defendants' motion to dismiss is whether the plaintiffs' procedural due process claim is barred by the applicable three-year statute of limitations.[4] As set forth below, the Court concludes that the plaintiffs' due process claims are time-barred.

A procedural due process claim is "brought pursuant to 42 U.S.C. § 1983, which provides a cause of action for remedying constitutional violations by state actors generally." *Morris v. Carter Global Lee, Inc.*, CV 12-01800(CKK), 2013 WL 5916816, at *4 (D.D.C. Nov. 5, 2013). Because § 1983 does not contain its own statute of limitations, courts apply the applicable state's general or residual statute of limitations for personal injury tort actions. *Id.* (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). This Court has applied "the District of Columbia's three-year residual statute of limitations for tort claims to § 1983 claims." *Id.* (citing *Earle v. District of Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012)). The moment of accrual for a § 1983 claim, however, is governed by federal law and begins when

---

[4] It is unclear why the defendants have not argued that this claim is also barred by the CMPA, at least for those plaintiffs that never pursued a challenge before the OEA.

a plaintiff has "a complete and present cause of action" and can "file suit and obtain relief." *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997); *Morris*, 2013 WL 5916816, at *4 (holding that a plaintiff learning of the reasons for his employment termination after the actual termination was irrelevant to the accrual of the plaintiff's claim that the dismissal procedure violated his due process rights, so the claim accrued at the moment of the plaintiff's termination).

The defendants argue that the plaintiffs' due process claims are time-barred, because the claims accrued on November 2, 2009, "the day that the reduction-in-force which ended their employment with the [defendants] went into effect," which is more than three years before the complaint was filed in January of 2013. Defs.' Mot. to Dismiss 7. Similar to the plaintiff in *Morris*, the plaintiffs argue that accrual did not begin until early 2012, when the plaintiffs learned of the CLRSC narratives used as reasoning for their terminations. Pls.' Opp'n 10-11.

The plaintiffs claim that the defendants violated their due process right by denying the plaintiffs an opportunity to respond to or rebut the statements in the CLRSCs, which were used in selecting the plaintiffs for termination as part of the RIF. Compl. ¶ 18. The plaintiffs claim that they did not receive notice that such narrative would be part of the RIF's determination process before or at their terminations in November of 2009. Compl. ¶¶ 17-18. Additionally, the plaintiffs claim that they did not become aware of the CLRSCs' content until early 2012, when they received copies of the CLRSCs in the mail. Pls.' Opp'n 5. According to this Court in *Morris*, however, these facts are irrelevant, because they do not affect the fact that plaintiffs claim that the defendants violated their due process rights at the moment they were denied an opportunity to respond to their terminations as part of the RIF, which took place in November of 2009. 2013 WL 5916816, at *5 ("What matters [in a procedural due process claim] is that

Plaintiff was allegedly deprived of notice and an opportunity to be heard at the time of his deprivation. His cause of action became complete at the moment of his alleged deprivation without due process.")

Even if the plaintiffs' claims that they did not know of the CLRSCs' narrative until early 2012 is accepted as true, as required at the motion to dismiss stage, that fact is "irrelevant" to the accrual of a procedural due process claim.  Because the plaintiffs were deprived of an opportunity to respond to their CLRSCs prior to their terminations in November of 2009, the plaintiffs had "a complete and present cause of action" at that point, more than three years before the plaintiffs filed their complaint in January of 2013.  *Bay Area Laundry*, 522 U.S. at 201. Because the plaintiffs' due process claim is barred by the applicable three-year statute of limitations, the plaintiffs did not provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Therefore, the Court grants the defendants' motion to dismiss as to the plaintiffs' due process claims.

**D.  The Defendants' Motion to Dismiss Regarding the Plaintiffs' Discrimination Claims is Denied**

The defendants argue that all ten plaintiffs' discrimination claims should be dismissed according to three separate arguments.  First, the defendants argue that six plaintiffs failed to exhaust their administrative remedies. Second, the defendants argue that three plaintiffs did not face adverse action by their employer when they retired. Third, the defendants argue that this court lacks jurisdiction over one plaintiff's claims due to *res judicata*.  For the reasons set forth below, all three arguments fail.

**1.  Six Plaintiffs "Vicariously Exhausted" Their Administrative Remedies**

The defendants argue that six of the ten plaintiffs' discrimination claims should be dismissed because those six plaintiffs "failed to meet the procedural requisites to bring their ADEA claims before this Court." Defs.' Mot. to Dismiss 7. The plaintiffs do not deny that the six plaintiffs failed to meet procedural requirements, but argue, instead, that under Title VII[5] they were not required to do so, because they are joining their identical claims to those of the initially filing plaintiff, Cynthia Hill, who properly completed all procedural requirements. Pls.' Opp'n 13.

Both the Age Discrimination in Employment Act (ADEA) and Title VII require that, "[b]efore suing under either the ADEA or Title VII, an aggrieved party must exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged discriminatory incident." *Washington v. Washington Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998) (citing 29 U.S.C. § 626(d)(1) (1994)); 42 U.S.C. § 2000e-5(e)(1) (1994)). To maintain a civil suit, a plaintiff has ninety days to file once the Equal Employment Opportunity Commission (EEOC) issues a right-to-sue letter to the plaintiff. *See Nkengfack v. Am. Ass'n of Retired Persons*, 818 F. Supp. 2d 178, 180 (D.D.C. 2011); 42 U.S.C. § 2000e–5(f)(1); 29 U.S.C. § 626(e). The ninety-day period begins to run "the day after the right-to-sue letter was received." *Akridge v. Gallaudet University*, 729 F. Supp. 2d 172, 178 (D.D.C. 2010) (citing Fed. R. Civ. P. 6(a)(1)). "No matter how slight the tardiness, a court is not at liberty to disregard the 90-day deadline out of a vague sympathy for any particular plaintiff." *Turner v. Afro-Am. Newspaper Co.*, 572 F. Supp. 2d 71, 73 (D.D.C. 2008) (citing *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152 (1984)).

---

[5] Despite the plaintiffs raising age discrimination claims pursuant to the ADEA, their opposition brief couches all of their discrimination claims pursuant to Title VII. This difference is irrelevant to this Court's decision, because in the context of this case, the procedural requirements are the same for both Title VII and the ADEA.

However, this Court has recognized the "single-filing exception" pursuant to the doctrine of vicarious exhaustion. *See Peters v. District of Columbia*, 873 F. Supp. 2d 158, 181-82 (D.D.C. 2012) (holding that the "single-filing" exception did not apply to five plaintiffs trying to "piggy-back" on one plaintiff's properly filed complaint); *Moore v. Chertoff*, 437 F. Supp. 2d 156, 163 (D.D.C. 2006) (finding that plaintiffs could rely on the vicarious exhaustion doctrine to join a properly pleading plaintiff). "The single-filing exception 'allows non-filing parties to join the suit of another similarly situated plaintiff who did file an administrative complaint against the same defendant.'" *Peters*, 873 F. Supp. 2d at 181-82 (quoting *Brooks v. Dist. Hosp. Partners, L.P.*, 606 F.3d 800, 804 (D.C. Cir. 2010)). A plaintiff may invoke this exception "only if one plaintiff actually has exhausted his claims and if the exhausted claims are so similar to the unexhausted claims that 'it can fairly be said that no conciliatory purpose would be served by filing separate EEOC charges.'" *Moore*, 437 F. Supp. 2d at 163 (quoting *Foster v. Gueory*, 655 F.2d 1319, 1322 (D.C. Cir. 1981)). To determine whether the exhausted claims and unexhausted claims are "'so similar that it can fairly be said that no conciliatory purpose would be served by filing separate administrative charges' . . . courts have examined the original EEOC filing of the party with the perfected EEOC charge to evaluate whether it provided sufficient notice of all charges by the plaintiffs who claim to be similarly situated . . ." *Peters*, 873 F. Supp. 2d at 182-83 (quoting *Cook v. Boorstin*, 763 F.2d 1462, 1466 (D.C. Cir. 1985)); *see also Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 64 (D.D.C. 2011) (holding that similarities of legal claims and overlapping facts were not enough to show that unexhausted claims were "so similar" to an exhausted claim and invoke the single-filing exception).

The six plaintiffs at issue[6] did not properly follow administrative procedures.[7] To survive their procedural missteps, these six plaintiffs are relying on the perfected filing of Ms. Hill by invoking the single-filing exception. Pls.' Opp'n 13. Ms. Hill's EEOC complaint alleges that she was discriminated against based on race, in violation of Title VII, and based on age, in violation of the ADEA. ECF Doc. 8, Ex. B. Ms. Hill's EEOC complaint, therefore, put the defendants on notice of racial discrimination claims under Title VII and age discrimination claims under the ADEA, in relation to the RIF.

In the amended complaint, each of the six plaintiffs' amendments begin by "accept[ing] all allegations made in paragraphs 1 through 48 insofar as they describe the 'One Round of Lateral Competition' and all activities, policies action matters [sic] therein related including the wrongs, violations, discrimination, torts losses of properties, rights created, caused by and connected to all Defendants and DCPS." *See e.g.*, Pls.' Compl. ¶ 56. All six plaintiffs accept Ms. Hill's allegations against the defendants, but also provide individual accounts of their own RIF experiences. Pls.' Compl. ¶¶ 49-97. While there is some variation among specific schools the plaintiffs were assigned to at the time of the RIF, the defendants failed to file a reply to the plaintiffs' opposition to address the variations between Ms. Hill and the six plaintiffs attempting to "piggy-back." It is possible, therefore, that the six plaintiffs' claims are too dissimilar to Ms. Hill's claim, but because the defendants did not take the opportunity to raise those arguments, this Court will not reach an argument that was not raised.

---

[6] The six plaintiffs are Carol Carter, James Lightfoot, Roland Ashby-Rier, Phyllis Lovett, Adele LaFranque, and Jerelyn Jones. Pls.' Opp'n 11; Defs.' Mot. to Dismiss 8.
[7] Carol Carter did not file with the EEOC; James Lightfoot did not file with the EEOC; Roland Ashby-Rier was added to the complaint 111 days after his right-to-sue letter; Phyllis Lovett's amended EEOC claim did not mention age discrimination; Adele LaFranque was added to the complaint 158 days after her right-to-sue letter; Jerelyn Jones was added to the complaint 111 days after her right-to-sue letter. Defs.' Mot. to Dismiss 8.

The possibly significant dissimilarities, however, could be insignificant. The plaintiffs argue that the six plaintiffs are all similarly situated to Ms. Hill, because they each "suffered and alleged the identical harm as" Ms. Hill. Pls.' Opp'n 13. Although all the plaintiffs are employed by the defendants, Compl. 14, each plaintiff likely had a unique narrative written about him or her by the corresponding school's administrator or principal in the CLDFs. The plaintiffs point out, however, that each narrative was passed to and accepted by DCPS as the primary justification for removal, Compl. 23, meaning that the individual schools likely did not make direct RIF decisions, but instead the decisions were left to DCPS. If this were true, then it is plausible that the six plaintiffs' discrimination claims would be "so similar" to Ms. Hill's claim that "'it can fairly be said that no conciliatory purpose would be served by filing separate EEOC charges.'" *Moore*, 437 F. Supp. 2d at 163 (quoting *Foster*,[8] 655 F.2d at 1322).

Because the later-added plaintiffs argue that their discrimination claims are "similarly situated" to Ms. Hill's discrimination claims, and because the defendants did not take the opportunity to raise any counter-arguments, this Court will apply the single-filing exception pursuant to the doctrine of vicarious exhaustion and allow these six plaintiffs to join Ms. Hill's properly filed complaint, despite their procedural missteps. This Court, therefore, finds the discrimination claims of Carol Carter, James Lightfoot, Roland Ashby-Rier, Adele LaFranque, and Jerelyn Jones are properly before this Court, and therefore, denies this portion of the defendants' motion to dismiss.

### 2. Three Plaintiffs Faced Possible Constructive Discharge

---

[8] The plaintiffs correctly rely on *Foster*, where the court found that the claims were "so similar" and allowed the plaintiffs' motion to intervene pursuant to the doctrine of vicarious exhaustion. 655 F.2d at 1323. One distinction from *Foster*, and this case, however, is that in *Foster* none of the intervening plaintiffs had filed with the EEOC, and in this case, out of the six plaintiffs attempting to "piggy-back" on Ms. Hill's claims, two never filed with the EEOC and four filed with the EEOC, but failed to file in this Court within ninety days. The parties have not briefed, therefore, the Court does not reach, whether this difference is significant.

The defendants argue that three plaintiffs failed to state actionable discrimination claims because they "were not subject to an adverse personnel action" when they voluntarily retired. Defs.' Mot. to Dismiss 9. The plaintiffs argue, in response, that while the three plaintiffs "may appear on paper as if they voluntarily retired," they were actually constructively discharged, which qualifies as an adverse action. Pls.' Opp'n 14.

"Under Title VII [and] the ADEA . . . the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). A constructive discharge can serve as an adverse action. *Joyce v. Office of Architect of Capitol*, 2013 WL 4758186, at *7 (D.D.C. Sept. 5, 2013). A finding of constructive discharge requires "a finding of discrimination and the existence of certain 'aggravating factors.'" *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1558 (D.C. Cir. 1997) (quoting *Clark v. Marsh*, 665 F.2d 1168, 1174 (D.C. Cir. 1981)).

An employee's resignation or retirement is presumed to be voluntary and not an adverse action, unless the employee overcomes the presumption by showing that the resignation or retirement was involuntary, and therefore qualifies as a constructive discharge. *See Aliotta v. Bair*, 614 F.3d 556, 566-67 (D.C. Cir. 2010) (citing *Veitch v. England*, 471 F.3d 124, 134 (D.C. Cir. 2006) (Rogers, J., concurring)). An employee's resignation or retirement, when the only other available option for the employee is removal by the employer *for valid reasons*, does not qualify as constructive discharge. *See Keyes v. Dist. Of Columbia*, 372 F.3d 434, 439-40 (D.C. Cir. 2004) (explaining that when faced with the choice of retirement or for-cause termination, choosing retirement is a difficult choice for the employee, but not an involuntary choice). "Mere uncertainty due to the threat of a RIF layoff does not translate into a constructive discharge."

*Aliotta*, 614 F.3d at 567 (distinguishing between an employee being faced with the risk for termination and the absolute certainty of termination). A plaintiff can overcome the presumption of voluntariness, however, by showing that the defendants created "aggravating factors . . . [and] deliberately made [the plaintiff's] working conditions intolerable." *Clark*, 665 F.2d at 1176 (holding that a plaintiff's retirement qualified as a constructive discharge because of the history of discrimination against the plaintiff by the defendant).

Three plaintiffs, [9] Curtise Woodward, Sandra Williams, and Francis Simmons, retired before the RIF went into effect on November 2, 2009. Pls.' Opp'n 1. While the defendants argue that the retirements were voluntary, the plaintiffs argue that while it "may appear on paper as if they voluntarily retired . . . this is a fact in dispute." Pls.' Opp'n 14. In order to overcome the presumption of voluntariness that accompanies retiring, the plaintiffs distinguish their experiences by arguing that "[i]f they had not retired they would have *certainly* [been] subject to the RIF." Pls.' Opp'n 14 (emphasis added). In support of this, the plaintiffs allege that they "received clear information about what would happen if they did not retire. . . . A reasonable person would have felt no other choice other than to retire . . ." Pls.' Opp'n 14. Again, because the defendants failed to submit a reply brief, the Court has no response to this argument.

If the plaintiffs allegations are taken as true, then the plaintiffs distinguished their case from *Aliotta*, where the employees only faced a risk of termination, but not certainty. 614 F.3d at 567. Based on the plaintiffs' allegations that they retired only after being told they would lose their jobs, it is, therefore, "plausible on its face" that the plaintiffs' retirements were involuntary and qualify as constructive discharge. *Twombly*, 550 U.S. at 570. The plaintiffs, therefore, provided "sufficient factual matter, accepted as true, to 'state a claim to relief.'" *Iqbal*, 556 U.S.

---

[9] The total number of plaintiffs that retired is four, but the defendant grouped one of those four plaintiffs into the failure to exhaust administrative remedies argument instead of the adverse action argument. Defs.' Mot. to Dismiss 3, 8.

at 678 (quoting *Twombly*, 550 U.S. at 570). The Court denies the defendants' motion to dismiss on these grounds. However, the defendants can explore this issue during discovery and perhaps, if the facts merit, raise it again at the summary judgment stage.

### 3. This Court Does Not Lack Subject Matter Jurisdiction Over Ms. Hill's Discrimination Claims

The defendants argue that this court lacks subject matter jurisdiction over Ms. Hill's discrimination claims pursuant to *res judicata*. Defs.' Mot. to Dismiss 9-10. The defendants argue that Ms. Hill "can only prevail on her [discrimination] claim if she can show that the reduction-in-force regulations were not followed . . . [and] this was already adjudicated by the OEA." Defs.' Mot. to Dismiss 10. Ms. Hill argues, in response, that her discrimination claim is not precluded, and she is entitled to jurisdiction in this Court.

The defendants correctly state that, "under *res judicata*, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Drake v. F.A.A.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry,* 449 U.S. 90, 94 (1980)). However, "'unreviewed determinations by state agencies stand on a different footing.'" *Davis v. Joseph J. Magnolia, Inc.*, 815 F. Supp. 2d 270, 274-75 (D.D.C. 2011) (quoting *Univ. of Tennessee v. Elliott,* 478 U.S. 788, 792 (1986)). Specifically, "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." *Univ. of Tennessee*, 478 U.S. at 792; *see also Davis*, 815 F. Supp. 2d at 274-75 (allowing the plaintiff's Title VII claim to move forward, because a state court had not yet issued a final ruling on the agency's decision, leaving the agency decision unreviewed). Agency decisions related to claims under the ADEA follow the same principle. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 106 (1991) (holding that "judicially unreviewed

findings of a state administrative agency made with respect to an age-discrimination claim . . . have no preclusive effect on federal proceedings").

In response to Ms. Hill's allegations about the legality of the RIF, the OEA issued a final order on whether the defendants' actions "pursuant to a RIF [were] done in accordance with all applicable laws, rules, or regulations." Defs.' Mot. to Dismiss, Ex. A. The OEA did not address Ms. Hill's discrimination claim under either Title VII or the ADEA. Defs.' Mot. to Dismiss, Ex. A. Furthermore, there is nothing in the record that shows that a state court reviewed the OEA's final order holding that the defendants' RIF proceedings were upheld. The OEA's final order is, therefore, "judicially unreviewed." *Solimino*, 501 U.S. at 106. While the defendants' argument that Ms. Hill's previous claim about the legality of the RIF is "[t]he linchpin" of her discrimination claim may be true, Defs.' Mot. to Dismiss 9, this does not preclude Ms. Hill's discrimination claim from being litigated by this Court, because they are two separate claims.[10]

Because the OEA did not address Ms. Hill's discrimination claim under Title VII or the ADEA, and because the OEA's final order is "judicially unreviewed," there is no preclusive effect on Ms. Hill's discrimination claims. This Court finds that it has subject matter jurisdiction over Ms. Hill's discrimination claims and therefore, denies the defendants' motion to dismiss regarding Ms. Hill's discrimination claims.

---

[10] Ms. Hill may face issue preclusion regarding the legality of the RIF process, but this is distinguished from claim preclusion. "Issue preclusion establishes in a later trial on a different claim identical issues resolved in an earlier trial, if certain conditions are met. First, the issue must have been actually litigated . . . Second, the issue must have been 'actually and necessarily determined by a court of competent jurisdiction' in the first trial. . . . Third, preclusion in the second trial must not work an unfairness." *Otherson v. Dep't of Justice, I.N.S.*, 711 F.2d 267, 273 (D.C. Cir. 1983) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).

## IV. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is granted as to the defamation and due process claims and denied as to the discrimination claims. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: March 21, 2014                          RUDOLPH CONTRERAS
                                               United States District Judge